UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
SHUKRULLO DZHUNAYDOV,

               Plaintiff,

  -against-

EMERSON ELECTRIC CO., HOME
DEPOT U.S.A., INC., TECHTRONIC
INDUSTRIES COMPANY LIMITED,
ONE WORLD TECHNOLOGIES, INC.,
TECHTRONIC INDUSTRIES NORTH
AMERICA, INC.,

               Defendants.
----------------------------------------------------x

**MEMORANDUM AND ORDER**
12-CV-2188 (FB) (RER)

*Appearances:*
*For the Plaintiff:*
MICHAEL ZILBURG
GARY CERTAIN
Certain and Zilburg PLLC
909 Third Avenue
New York, NY 10022

*For the Defendant:*
ROSARIO M. VIGNALI
Wilson, Elser, Moskowitz, Edleman,
& Dicker, LLP
3 Gannett Drive
West Harrison, NY 10604

**BLOCK, Senior District Judge:**

      On July 1, 2011 Shukrullo Dzhunaydov injured his hand while operating a 10" Ridgid-brand table saw. Dzhunaydov filed this action against Emerson Electric Co. ("Emerson"), Home Depot USA, Techtronic Industries Co. Ltd., One World Technologies, Inc., and Techtronic Industries North America, Inc., (collectively, the "Defendants"). The Defendants now move for summary judgment as to Dzhunaydov's

failure-to-warn claims, and all claims as to Emerson. For the reasons that follow, the motion is denied in part and granted in part.

I

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is genuine if the "evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court's jurisdiction over this matter is based on the parties' diversity; accordingly, New York law applies to Dzhunaydov's claims. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)

II

Under New York law, "[a]trademark licensor cannot be held liable for injuries caused by a defective product bearing its label where the licensor did not design, manufacture, sell, distribute or market the allegedly defective item." *D'Onofrio v. Boehlert*, 635 N.Y.S.2d 384, 385 (4th Dep't 1995); *see also Bova v. Caterpillar, Inc.*, 305 A.D.2d 624, 761 N.Y.S.2d 85, 87 (2d Dep't 2003) ("Liability cannot be imposed on a party that was outside the chain of manufacturing, selling, or distributing a product."); *Auto. Ins. Co. of Hartford Connecticut v. Murray, Inc.*, 571 F. Supp. 2d 408,

2

422-23 (W.D.N.Y. 2008) ("Although the actual exercise of control is not required by [case law], the requisite 'capacity' of exercising control must exceed the mere existence of a licensing arrangement. . . .")

The saw that injured Dzhunaydov's hand bore the "Ridgid" trademark. The mark is owned by Ridgid, Inc., a wholly-owned subsidiary of Emerson. Emerson licensed the Ridgid mark to Home Depot pursuant to a licensing agreement. Home Depot used the mark to market a line of power tools, which were designed and manufactured by other companies on Home Depot's behalf. One World designed, manufactured, assembled, tested and certified the Ridgid saw at issue in this case.

This Court previously denied Emerson summary judgment, declaring that judgment was premature because "the licensing agreement may offer additional evidence to refute the claim" that Emerson was a mere trademark licensor. Order, ECF No. 34, 1. However, Dzhunaydov has not produced any evidence to demonstrate that Emerson contributed to the saw's chain of distribution.

Under the licensing agreement, Emerson retained limited authority over the Ridgid mark, akin to a right to approve for quality control. *See* Defs.' Mot. Sum. J., Ex. J, 5 ("Home Depot . . . agrees that [Emerson] reserves all rights of approval, such approvals not to be unreasonably withheld, which are necessary" to "protect and enhance the reputation and integrity" of the mark.) There is no evidence, however, that

Emerson exercised control over the design of the saw. In fact, the evidence is to the contrary.

For example, as Thomas Hill, Senior Director of Product Safety at One World, attested,

> Emerson was not involved in the subject table saw's design, manufacture, testing, assembly and/or certification...Emerson may from time-to-time review the product and operator's manuals for "Fit and Finish"; that is, it may conduct a review of the product's non-functional design features such as its graphic art, its color printing font, the labeling, and the layout of the operator's manual –all to determine, and become satisfied, that the product at issue has the look and feel of a "Ridgid" product.

Defs.' Mot. Sum. J., Ex. Q, Aff. of Thomas Wayne Hill, 3. Hill's deposition testimony was consistent with the above-quoted affidavit:

> A: Emerson does not have input into the design of the product, so no, we do not provide a sample to Emerson for review of the design.
> Q: For any purpose, have you ever provided samples of manufactured products bearing the Rigid [sic] trademark to Emerson?
> A: Yes, products and operator's manuals for their review, because Emerson has the right to review the name style, the labelling [sic], the style used in the operator's manual, the preference of layout for the operator's manual. . . .Graphic design, yes. It's not part of the product design–

Defs.' Mot. Sum. J., Ex. M, Dep. of Hill, 332.

Additionally, Charles Ngwara, a Home Depot representative, attested to Emerson's limited role as a trademark licensor."[W]ith respect to the subject [table saw], Emerson was merely the licensor[] of the "Ridgid" trademark to Home Depot. .

. . Emerson did not design, manufacture, assemble, test and/or certify the subject table saw, nor did Emerson exercise any significant role in the table saw's final quality or the warnings that accompanied it." Defs.' Mot. Sum. J., Ex. R, Aff. of Charles Nwagbara, 2.

Nonetheless, Dzuhnaydov argues that the licensing agreement demonstrates sufficient control by Emerson to warrant liability under *Automobile Insurance Company of Hartford v. Murray, Inc.*, 571 F. Supp. 2d 408 (W.D.N.Y. 2008). However, in *Murray*, unlike here, the trademark licensor exercised its authority to control and inspect the products bearing its mark, performed quality control visits, and approved the specifications for the product at issue. Even if the present licensing agreement authorized Emerson to exercise such authority, there is no evidence that Emerson actually exercised such authority. *See id.* ("[T]he requisite 'capacity' of exercising control must exceed the mere existence of a licensing agreement.").

Accordingly, the defendants' motion for summary judgment is granted as to all claims against Emerson.

### III

With respect to the failure-to-warn claims as to the remaining defendants, material issues of fact preclude an entry of summary judgment. Under New York law, failure-to-warn liability is "intensely fact-specific," however, the claims can be decided as a matter of law "(1) where the injured party was fully aware of the hazard through

5

general knowledge, observation or common sense, or participated in the removal of the safety device whose purpose is obvious; or (2) where the hazards are patently dangerous or pose open and obvious risks." *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 179-80 (E.D.N.Y. 2008) (internal citations and quotations omitted); *see also Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir. 1997) ("The adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment.").

Here, factual questions remain as to (1) Dzhuynadhov's knowledge of the saw's hazards; (2) whether the warnings on the device were adequate; and (3) whether the hazard was open and obvious. The parties dispute Dzhuynadhov's level of experience and training, as well as the adequacy of the warnings. Moreover, Dzhuynadhov provides expert testimony to dispute the obviousness of the hazards of a saw kickback.

Accordingly, the defendants' motion for summary judgment on the failure-to-warn claims is denied.

## IV

For the reasons stated above, Defendants' motion for summary judgment as to Dzhunaydov's failure-to-warn claims is denied and Emerson's motion for summary judgment as to all claims is granted.

**SO ORDERED**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 17, 2016